This case essentially has three issues in it the way we view it. The first issue and the most important issue is whether there was sufficient evidence to prove that the Petitioner was here from July 29, 1996 to July 29, 1989. Essentially, the evidence that was produced at trial in this case, there was no evidence suggesting that the Petitioner had left during any of that time. The only evidence that existed was evidence that showed the Petitioner was here during that time. But the Court in that case was It was flimsy evidence and it was confusing, contradictory evidence. There wasn't a whole lot. There wasn't a whole lot for a very, very important reason, and that is that the Petitioner is very poor. She didn't have – she testified that she had no gas bills, she had no car, she had no – she had no car. She had no – she had no house payments, but she did have – Didn't know anybody else? She did. Just one person? She had four affidavits, and she wasn't able to produce those people because she didn't have counsel until the very, very end of her case. It was the last time she could afford counsel. So that counsel requested a continuance. Obviously, to talk to those witnesses and was denied that continuance. She had lots of time. And she produced – she produced one witness and documents, but she wasn't able to get the other witnesses because she didn't have them. Not very many documents. One document was? No, there were several. The documents that she had were tax returns from 93 to 95. She had pay stubs from 91 to 93. Wait a minute. I'm sorry. What period are we leaving with here again? The period that she was here was from 1988 to present. She left once, but that was after the July – We're talking about the period 88 to 93. Am I hearing that? Yes. She had a California ID, which she had from San Jose. I know the respondent's brief indicated that she never – she didn't testify that she ever lived there, but the record shows that she did testify that she had lived there for a couple of months. Can I ask you a question about the IJs finding? I mean, I thought that there was a lot of stuff, and there was a lot of – none of it was very continuous, but there was a lot of stuff. I thought the IJ made a finding that he believed her testimony when she got on the stand and testified that she had been here. Is that true? That is true.  So then, I guess, how come you're not standing up here saying, look, there's a lot of contradictory evidence, but the IJ made a credibility finding, and my client said she was here? So why aren't you arguing that? I am arguing that, Your Honor. I don't believe it was contradictory evidence. There may be some confusing evidence. This is what I call the quantity of evidence, where the trier fact has evidence that's believable and is sufficient to make a finding, but says we don't have enough. There's not a quantity of evidence. The quality is fine, but there's not a quantity. Nowhere in law do I know that such a quantity exists. In fact, a court can put a man to death on the basis of one credible witness. I don't see why one credible witness can't testify as to seven years. That's exactly the point you're making. You have to show continuous evidence for period, and it's much harder to prove with just one point or two. Well, she testified. She was asked specifically, and she never contradicted that. Nor did the Respondent ever provide any evidence that she ever left. Nor did any of the witnesses or any of the affidavits or any of the testimony. She testified that she had never left until 1998 when she went back because her mother was sick or something. That's correct. And I thought the only thing that in her testimony that was somewhat confusing was the day she actually arrived. Am I correct that that is the point that was confusing about her testimony? That's correct, but she had an I.D. And she said, based on my I.D., the I.D. can't change. That's a physical evidence. Well, you have the I.D. from 88. From 88, which were done prior to the seven required years. Okay. So the seven years is proven. It's just a question of is there such a thing as quantity of evidence. I don't believe there is, and there's no case law that seems to indicate that. It's just a question of how did the prior fact determine credible evidence. And there was clearly a finding that she was credible. The only other real issue, if that's not an issue, obviously the continuance question deals on that. And the only thing I would add on the continuance question is there was actual evidence that was getting the witnesses. Had the attorney been given the continuance, obviously that's the evidence that they would have gotten were those witnesses. Because the Respondent or the Petitioner just didn't have any more evidence. She just testified that was all she had. Yeah. I think it seemed to me that the continuance issue wasn't so strong for you. I mean, she had so many opportunities to present people, and she brought in a person. I mean, there wasn't any specific evidence that it was some particular witness that she couldn't bring that day. That's correct. And Ms. Darnell, the one who requested continuance, when she put in her brief about the matter of Sobern, she discusses the matter of Sobern, which is an INS case. She says the evidence must be favorable, not cumulative, which is really the issue. Would the evidence just have been more of the same? If it would have been more of the same, there's already seven years' presence. The continuance doesn't matter. So you want this remanded for them to get to the issue of hardship? Well, I don't really understand what the BIA did. They never mention it. I don't know what that means. Maybe that needs to be remanded. I don't know that it necessarily does, because it's our view, and I think even the Court's view, that Tukamanich controls that issue. This was a – this is the claim – even the judge mentioned Tukamanich, in that this was a situation where a woman was essentially here to provide for her mother, and that was essentially her whole life. And her mother wanted to have a prosthesis on her foot, because her foot had been removed. And she was trying to take care of her mother. She also had a son who wasn't working, but I think it's less clear that he was. I thought the hardship issue is a discretionary one that we don't review. Am I wrong on that? There was a point in that, but Tukamanich clearly reviewed that, and Tukamanich clearly held an opposite. And I think Tukamanich is really the only case. In Tukamanich, the woman just lived to provide money for her family. In that case, the judge determined that there was no hardship, and this Court overturned that ruling and provided a – and provided relief. But the BIA never made a ruling on that, never issued that. That's why I thought if you're successful, what you want is a remand for them to get to that issue. Either that or a decision that hardship's been found. Obviously, we would – I'd prefer – I'm sure my client would prefer a ruling by this Court that all conditions have been met, but failing that, certainly we would request a remand of the BIA. I don't know why the BIA didn't say that. I guess you can argue either way, that they felt it wasn't important or that we had prevailed on that issue. It was not that issue that concerned them. It was only a 7-year issue. Thank you. Okay. Ms. McAuley. May it please the Court, I'm Jennifer Parker for the United States Department of Justice, and I represent the Respondent, the Attorney General, John Ashcroft, in this case. First of all, I'd like to address the Court's concerns about the credibility issue, and it appears there's a little bit of confusion. The immigration judge did address credibility, but that was when he was making a finding on her asylum claim. He first reached the asylum claim and went through the credibility as to asylum, which he's required to do. And he went over – there were some discrepancies in her asylum application, pretty big ones. But he said, you know, it looks like you – we're just going to disregard your asylum application. And he went by her testimony and found that she was credible as to saying she came here for economic reasons, her mother lost her foot, those things. So that's what the credibility determination went to. The credibility determination didn't go to the suspension. I thought it was – I thought he made one credibility finding. Well, he – what he does was he goes, first I'm going to address the asylum claim, and he goes through asylum law. And then he says that's part of the asylum claim, we have to look into credibility. And he finds her – that she's testified as truthfully as she possibly can, that there's been some gaps as to her asylum claim. But he overall finds that she's tried to answer honestly. That does not go to the suspension claim, which he clearly had issues with the gaps, the huge gaps in her suspension claim. Well, he had gaps with the documents. Yes. But he finds her credible. And then I take it – and then he says that he's now then – he never says, I now find her incredible with regard to her testimony, that aspect of her testimony that relates to her length of service. No, Your Honor. He didn't. But he's required to make a credibility determination as part of the asylum. He's not required to come – it possibly might have helped assisted this court had he said, I find her credible as to asylum but not credible as to suspension. However, I think a fair reading of the record and knowing the law of asylum and of suspension and deportation, for asylum he's required to find whether or not she's credible. For suspension, he clearly indicates that, you know, you have – or the female immigration judge. I'm sorry if there were two in this case. Right. She clearly indicates that there were – that there were problems with the Respondent's credit – with her – with her testimony as to how long she'd actually been here. So she's – Wait, wait. She never said there was problems as to her testimony with how long she's been here. She said there was problems with the documentation. And she's not required to accept only the Respondent. She can certainly consider the Respondent's testimony that she's been here for the entire seven years, but she's not required to accept that. And she repeatedly – both immigration judges repeatedly told the Respondent over a period of two years that we need documentation for the time period from 1988 through 1991. In fact, the second immigration judge did tell – did ask the Respondent, does she have bills, does she have anything to show, you know, receipts, gas company receipts, accounts, and the Respondent did say yes. And I believe that that was at the – that was at the hearing held on December 12th – or December 8th, 1997. She was then given 10 more months. And she'd already been – this case had started on October 23rd, 1996, so she'd already had a considerable amount of time to get that information. So the immigration judge told her, look, I need more documentation from that period. And Respondent had 10 months to present that and did not – did not bring anything. And she still has not shown what she would have produced. And that would go to the prejudice problem of her due process. And she has not shown in any – in her appeal to the Board or her appeal to this Court what, if anything, she would have presented to show that she was actually continually present. As you read the I.J.'s decision, is it – did the I.J. have more trouble with the time of entry, the date of entry, or with the continuity of her presence? No, Your Honor, with the continuity of her presence. I mean, she – it's clear she has an identification card from 1988. And even if you read the affidavits, a few of them do say that they've known her since 1989, that she's been here. That still does not establish continuous presence for those entire seven years. Other than her testimony? Other than her own testimony, which – So what's – where do you get the requirement that she needed corroboration of her continuity? She – well, the immigration judge, the factors that she can consider would be – and usually – and what they've done with this particular Respondent several times was give her a list of things that they need, typically, you know, bills to show that you've paid rent, you've paid your gas and electric, you've, you know – or you can bring in a witness to say, I've known her, she lived next door to me all of this time. She did bring in one witness to testify to that effect, and the witness clearly did not know when – for how long she'd known the Respondent. It was – first it was 1984, then it was since 1980, and then since 1990, and then definitely since 1984. I mean, it was just all over the place. So – Let me read you a sentence here. Yes. This is on page 42. Okay. He made the credibility finding with regard to asylum. And he's all done with asylum. And he says – okay. And then he says, as far as the issue of credibility, I've already found her a credible witness. You think that doesn't relate late to the seven years? Well, Your Honor, I don't think he's saying – and I agree that there's an issue with him not coming out and saying, I find her credible as to asylum, but not credible as to suspension. He goes again – he's gone through asylum. Now he's talking about – okay. And he's just – so he finishes making a sentence, as far as the issue of credibility, I've already found her credible witnesses. And he says, I turn to the analysis of the seven years. And then he goes through – she goes through all the record. I mean – Well, Your Honor, if you read the sentence, he's talking when he says – he's talking about her hardship, whether the extreme hardship. And he finds her – he's talking about whether she's credible as to what she's testified as her extreme hardship, which, again, went to the same claim she's making for asylum. Her mother lost her foot. She's trying – she's up in the United States. It doesn't also relate to her non-asylum claim? Well, he says he – what he says is, I find her credible as to the fact she's testifying that she came to the United States for economic reasons to help her mother and her 20-year-old son. That goes to her asylum, and that's also her claim for the hardship as far as her suspension claim. He does not say, I find her credible as to her seven years. And she clearly – the immigration judge did not believe that she had been here for seven years because she was requiring her to bring – to give more documentation on that. She doesn't come out and say, I find you credible as to why you're here, but not credible as to how long you've been here. Certainly, it would have been helpful. Yes, I found her a credible witness. So she's already said specifically, I found her a credible witness on all these issues relating to asylum. I find her a credible witness on hardship, which relates to both claims. And then all of a sudden, we're supposed to imply that he finds her a non-credible witness. It sounds like this judge thought that it's not sufficient just to have the witness testify, that there has to be more. Or maybe what he meant was, yes, she's trying to tell the truth, but she doesn't really know what the truth is. Well, I believe when he made the original credibility determination – just give me a moment. Okay. She has some memory losses, but on the whole, within her ability, she's tried to answer the questions in a forthright and credible manner. I do find that she's a credible witness. She said, I came here in about 88. She couldn't remember the right day. Her asylum application said 87. Right. And then she says pretty clearly, I didn't leave until 98. So even if she has some memory lapses about exactly where she was working or what she was doing. Well, and Your Honor, it's clear that the immigration judge did not believe that that was enough. All right. And did not believe that she had been here the entire seven years. And I realize your issue with – and it would have been more helpful had the immigration judge said, I don't find you credible as to how long you've been here. But I believe a fair reading of the record shows that the immigration judge did not believe that she had been here the entire seven years. And that was why she specifically – both immigration judges had asked, we need more. We need you to show us receipts. Somebody who's been here this long should have, you know, some sort of proof that they've been here. And even the one witness she did bring in could not establish that. Of course she did have some proof. She had employment records relating to a number of the years. Not for the period that we're concerned with, which was 1988 through 91. So really all she had was that one California ID card, which doesn't establish that she's been here for those entire three years, just that she was here in 88. She could have gone back. Is this different than other immigration questions, where I think this Court at least has said that you don't need corroboration if you have credible testimony on all the elements that are needed to be proved? Your Honor, that's again talking about asylum, which is different standards than for a suspension claim. And yes, if the applicant for asylum is found to be credible, or even, I mean, there's not always corroboration. Certainly it can be. You can require corroboration, although this Court does not always do that. But where testimony, that's as far as asylum. And it's abundantly clear that she was not, she did not qualify for asylum in this case, despite the fact that she was credible because she just had no persecution claim. But yes, in an asylum case, if credibility is an issue, certainly corroborating evidence can be required of the applicant where they're just not credible. And if it's reasonable for them to provide that corroborating evidence. Certainly if it's something unreasonable to expect them to bring, they're not expected to. Okay, thank you. Time is up. I think you had some time left. Two minutes and 28 seconds left. Your Honor, just quickly. I was talking to your opponent. Oh, okay. I'm sorry. Your time is up. Thanks again, Your Honor. Steven J. Alexander on behalf of the Petitioner. Just in a brief second, the issue then becomes, can you prove your seven years if you don't have any documents? Is that ever possible? And not only should that be possible, but in this case. That's certainly not the issue. The issue is, can the I.J. insist on documentation if he's not persuaded by testimony alone? I agree. That's certainly an issue. Look, I'm not persuaded. I need to see more. That's what we do in real life. A lot of times people come and tell us things, and we say, well, show us documentation. You know, memories are bad. Even when people are trying to tell the truth, they get their facts mixed up. But a piece of paper doesn't lie, or usually doesn't lie. There were pieces of paper, but the I.J. did something very interesting on page 43 through 44. She goes through an analysis and explains even better than I could exactly why there are no documents. And she sets out why the – she makes a very good argument of why this person wouldn't have documents. So she understood. She understood why, nevertheless. Yeah, and for reasons she doesn't explain. Being a prior fact, nevertheless, she says, I'm not persuaded. I understand there may be reasons. There may be good reasons. But in this case, I find this person enough proof of continuous residence. My understanding of the statute, my belief in the statute is you have to be here seven years, not that you have to prove that you've been here seven years, that you actually have been here seven years, and that's the issue. And whether – to say that I believe you've been here seven years, but you don't have sufficient documents, even though I believe that, I think goes beyond the requirement. I don't think the I.J. ever said she believes that Patricia has been here seven years. Well, she – You know, I think you're generally testifying truthfully, but I realize memories fade. People forget things. And I'm not persuaded that you had – that you in fact were here seven years. There are big gaps in your documentary evidence. You have affidavits from people who haven't bothered to come in. You had plenty of time to bring them in for them to testify and identify you. The one witness you brought in was probably more hurtful than helpful. And given the totality of the circumstances, being a trial fact, I'm just not persuaded that you are – you have to prove what you must prove. I don't see what's wrong with that. Well, to believe that, you must believe that there was a break, that she left and went back to Mexico. And that's not something that a memory will fade. You may forget the date that you went, but it's really hard to believe that you would forget that she actually left. People forget all sorts of things. But she remembered a specific date that she left. People may remember going back to Mexico and think it happened 10 years earlier and then it happened, it happened later, all sorts of stuff. I'm never surprised by what takes memory player. And then someone who doesn't have documents, although they've been here seven years because they're poor. That's the beauty of documents. We don't have to rely on tricky, faulty memory. There's no question that I would have preferred documents. And I'm sure she would have preferred documents. But if they don't exist, I don't think she forfeits her claim to the institution. No, no, she can still present the claim, but it doesn't mean that the IJ has to buy it. I mean, she got her shot. She brought what she had. She told her story. But you want to go one step further and say, having done that and having done her best, the IJ was required, had no choice but to accept her story. I just don't think that's the way it works. I think that's how trials of fact are. They look at evidence. It could be enough. Some trial of fact might be persuaded. Another trial of fact may look at the same evidence and say, I'm not persuaded. Do you agree with your opponent that in this kind of a case, the IJ can require corroboration of credible testimony? No, I don't believe that. I think if you can put a man to death on the basis of one credible witness, you certainly can make a determination of seven years' physical presence on the basis of that. Have you spoken to that issue in this kind of a case, where the corroboration can be required of credible testimony? I'm not certain, Your Honor. I haven't checked. All the cases come from asylum contests where we've said, well, you know, you really can't expect people fleeing persecution to grab with them evidence of their persecutors. But this is a question of keeping telephone bills and electricity bills and correspondence and things of that sort that are produced in this country. You don't have to take them with you. All you have to do is keep them. To the average person, that's true. But to a person who doesn't have a telephone who can't afford one and is not making payments and can't explain why, those documents simply don't exist. Maybe living in a shopping bag, you know. You wouldn't even have an address, right? That's correct. And then I don't believe that you'd have to forfeit your claim because you're never going to be able to produce documents because you don't have any. They don't exist. They simply don't exist. Okay. Thank you. Okay. Just allow yourself a minute.
judges: Kozinski, Tg Nelson, Restani